630 A.2d 16

Allen POWELL and John Mitchell, Appellees,

v.

Robert Franklin WALKER and Charter Risk Retention Group Insurance Company.

Appeal of CHARTER RISK RETENTION GROUP INSURANCE COMPANY, Appellant.

Superior Court of Pennsylvania.

Argued Feb. 17, 1993.

Filed Aug. 4, 1993.

Lawrence M. Kelly, Philadelphia, for appellant.

Richard Farber, Philadelphia, for appellees.

Before BECK, KELLY and BROSKY, JJ.

KELLY, Judge.

In this case we are called upon to determine, among other issues, whether an automobile liability insurer may rescind an automobile policy after sixty days from its inception to prevent a claim by a third party. Pursuant to recent Superior Court precedent, we hold that the insurer cannot so rescind. Therefore, we affirm the trial court's order requiring the liability insurer to compensate the third parties for injuries caused by the insured.

The parties stipulated to the following facts:

1. Charter Risk Retention Group Insurance Company [appellant] issued to Lucky Duck/555 Valley Corporation a fleet automobile liability insurance policy for a period beginning prior to August 30, 1990 and ending after August 30, 1990 which policy was in full force and effect at all times pertinent to the action.

2. The aforesaid policy covered the motor vehicle owned by Lucky Duck/555 Valley Corporation (hereinafter referred to as "Lucky Duck") and driven by Robert Walker involved in the accident on August 30, 1990.

3. Robert Walker rented a motor vehicle from Lucky Duck.

4. Robert Walker had rented the motor vehicle from Lucky Duck with the intent to use the motor vehicle for his own personal purposes and for the purpose of using it as an unlicensed vehicle for hire i.e. taxi cab.

5. Robert Walker was operating the Lucky Duck rental vehicle on August 30, 1990 when he was involved in an automobile accident.

34

6. At the time of the accident, Robert Walker was using the Lucky Duck rental vehicle for his own non-business personal use.

The rental agreement between Lucky Duck and Walker provides: "In no event shall the vehicle be used, operated or driven (1) for transportation of person for hire, express or implied...." Rental Agreement, paragraph 1. The rental agreement also states:

Lessor shall provide an automobile liability insurance policy for the benefit of Lessee and others of age 21 or older driving with his prior consent, with limits of $100,000 for injury or death of any one person, $300,000 for injuries or death in any one accident and $25,000 in the case of a car and $50,000 in the case of a truck for property damage in any one accident. Lessee agrees to comply with and be bound by all the terms, conditions, limitations and restrictions of such policy as if here fully set forth, including any of the same not specifically mentioned herein. Such policy shall not apply ... (3) to any liability of Lessee or any driver, or any employer of either, arising while the vehicle is being used in violation of any of the limitations set forth in Paragraph 1, above....

Rental Agreement, paragraph 5.

As a result of the automobile accident, the occupants of the other vehicle, Allen Powell and John Mitchell (appellees), alleged personal injuries in a law suit against Robert Walker. Walker sought indemnity from appellant, the liability insurer. Appellant denied coverage, stating, *inter alia*, that the rental agreement, which provided insurance coverage, was void *ab initio* because Walker had made material misrepresentations when he signed the rental agreement.

Appellees then instituted a declaratory judgment action seeking a determination that appellant was liable for appellees' injuries pursuant to the liability insurance portion of the rental agreement. Appellant answered and filed a New Matter, asserting that Walker was not a permissive user of the vehicle and that Walker had procured the rental vehicle

through fraud and misrepresentation. The parties stipulated to the facts set forth above, and based upon the record, the court decided in appellees' favor. Judgment was entered on the trial court's order, and appellant timely appealed.

On appeal, appellant presents the following question for our review:

WHETHER THE LOWER COURT ERRED BY RE-QUIRING [APPELLANT] TO PROVIDE COVERAGE FOR INJURIES TO [APPELLEES] WHICH WERE ALLEGEDLY SUSTAINED AS THE RESULT OF AN AUTOMOBILE ACCIDENT BETWEEN ROBERT WALKER, THE LESSEE OF A RENTED CAR, AND [APPELLEES] WHEN THE CAR RENTAL AGREEMENT WHICH GAVE RISE TO THE COVERAGE WAS VOID AB INITIO BECAUSE ROBERT WALKER WAS NOT A PERMISSIVE USER OF THE AUTOMOBILE AND BECAUSE HE MISREPRESENTED A MATERIAL PROVISION IN THE CAR RENTAL AGREEMENT.

Appellant's Brief at 3. Appellant contends that the trial court erred for three reasons. First, appellant argues that Walker was not a permissive user of the rental vehicle. Next, appellant argues that the insurance provision of the rental agreement was void *ab initio* because Walker had made material misrepresentations when applying for the rental car. Finally, appellant asserts that the language of the insurance portion of the rental agreement excludes coverage if the vehicle was used as vehicle for hire.

■ Relying upon *Searfoss v. Avis Rent–A–Car Systems, Inc.*, 349 Pa.Super. 482, 503 A.2d 950 (1986), appellant first argues that Walker was not a permissive user of the rental vehicle which he was driving at the time of the accident. According to appellant, Walker did not have permission to drive the vehicle because when he rented it, he possessed a present intent to use the car for both personal and business use. Appellant recognizes that the facts of record do not establish that appellant ever actually used the car for business purposes. Nonetheless, appellant maintains that Walker's

impermissive *intended* use precludes coverage regardless of actual use. We disagree.

In *Searfoss, supra,* this Court was asked to review whether a car rental company had given implied or express consent for the lessee's son, who was younger than twenty-one years old, to use the rented vehicle. One of the terms of the rental agreement provided that family members could drive the rented car but only if they were ". . . at least twenty-one years old. . . ." *Id.* at 485, 503 A.2d at 951. We enforced the unambiguous terms of the agreement and held that lessee's son was not permitted to use the rental car. Therefore, the liability coverage provided by the rental company which applied only to permissive users, did not indemnify the son. *Id.* at 489, 503 A.2d at 953.

In the instant case, there was no impermissive use. Walker was driving the car for personal use when the accident occurred. Moreover, the bare facts of record reveal no evidence that Walker had ever used the car in a way not permitted by the rental agreement.

The instant case differs from *Searfoss, supra* because in *Searfoss,* the car was being used in clear violation of the rental agreement. Instantly, at the time of the accident, the car was not being used in violation of the rental agreement. Therefore, we reject appellant's argument which is based upon the assertion of an impermissible use by Walker.

Next, appellant argues that Walker's statements of intended use amounted to a material misrepresentation because he harbored a present intent to use the car both for personal use *and* to carry passengers for hire. Due to this misrepresentation, appellant argues, the rental agreement was void *ab initio.* Appellant, therefore, concludes that neither Walker nor appellees could assert a claim under the insurance portion of the rental agreement. We disagree.[1]

---

1. We do not address whether Walker's misrepresentation was "material." Whether a misrepresentation in an insurance application is material, where the misrepresentation is not related to the one risk which eventually caused the loss or injury, is an issue which has been approached in conflicting ways. *Compare Metropolitan Prop. & Liab.*

In *Metropolitan Prop. & Liab. Ins. Co. v. Insurance Comm'r (Bonnie Beck)*, 517 Pa. 218, 535 A.2d 588 (1987) (plurality) [hereinafter "Bonnie Beck"], our Supreme Court held that an automobile insurer may not rescind an automobile insurance policy upon learning that the application for insurance contained material misrepresentations. In the Opinion Announcing the Judgment of the Court,[2] Justice McDermott

*Ins. Co. v. Insurance Comm'r (Bonnie Beck)*, 517 Pa. 218, 233, 535 A.2d 588, 596 (1987) (Nix, C.J., concurring) ("Property damage by vandalism or theft of a vehicle and its contents has no relationship to the drivers' misstatements as to their prior driving records."), *with Shafer v. John Hancock Mut. Life Ins. Co.*, 410 Pa. 394, 189 A.2d 234 (1963) (life insurer entitled to rescind policy because applicant lied about health on application, even though applicant's death was a result of an automobile accident).

Moreover, in the instant case, this issue is especially difficult. The lease agreement provides that the lessee should not use the leased auto to carry passengers for hire. The insurance portion of the lease agreement states that there will be no insurance coverage for losses or injuries arising out of an accident *while* the automobile was being used in violation of the lease agreement.

Therefore, on the one hand, a present intention to use the leased car in the future for carrying passengers for a fee would seem to be material, insofar as the lessor would likely resist leasing the car for such purposes and the liability insurer would likely not underwrite such a risk or do so only for higher premiums. *See A.G. Allebach, Inc. v. Hurley*, 373 Pa.Super. 41, 52 540 A.2d 289, 295 (1988) ("Information is said to be material if knowledge or ignorance of it would naturally influence the judgment of the insurer in issuing the policy, in estimating the degree and character of the risk, or in fixing the premium rate."). On the other hand, by expressly excluding coverage for injuries arising from an accident when the car was being used in violation of the lease agreement, the insurer may have intended to enter into a binding contract of insurance with the lessee, even if the car would sometimes be used to carry passengers for a fee. The insurer would thereby insulate itself from claims arising from an accident caused by the leased car *while it was being used* for carrying passengers for hire, while underwriting the risks of injuries or losses occurring while the leased car was being driven for personal use.

While we recognize the troublesome issue in this case, *i.e.*, whether lessee's intention to use the car for personal use *and* to carry passengers for a fee constituted a material misrepresentation, this issue need not be decided. For the reasons discussed in the text, appellant cannot treat the insurance policy as void *ab initio*, at least as to appellees, even if lessee's statements constituted a material misrepresentation.

2. Justice Zappala joined the Opinion Announcing the Judgment of the Court. Chief Justice Nix wrote a concurrence which Justices Flaherty

reasoned that the General Assembly intended to preempt the common law right of rescission by enacting a comprehensive process for insurance companies to *cancel* automobile insurance policies due to misrepresentations by an applicant. *See* 40 P.S. §§ 1008.1–1008.11.[3] Justice McDermott's plurality opinion explained that the legislature had amended the statute to provide for structured cancellation, even when

> ... the insured has concealed a material fact, or has made a material allegation contrary to fact, or has made a misrepresentation of a material fact and that such concealment, allegation or misrepresentation was material to the acceptance of the risk by the insurer.

40 P.S. § 1008.4(3). Therefore, according to the plurality, instead of having the right to rescind the insurance contract, an automobile insurer in Pennsylvania would only be able to *cancel* the policy, thereby remaining liable for injuries and damages incurred before the cancellation.

The *Bonnie Beck* plurality drew a concurrence, written by Chief Justice Nix and joined by Justices Flaherty and Papadakos, which agreed that the insurers in that case were not entitled to rescind, but opined that Justice McDermott's opinion too broadly construed the legislation as preempting the common law right to rescission. Chief Justice Nix and the two Justices who joined him found a misrepresentation as to driving record immaterial to property damage caused by vandalism.

and Papadakos joined. Justice Larsen concurred in the result. Justice Hutchinson did not participate in the decision of the case.

3. Rescission of a contract and cancellation of a contract are two separate and distinct legal concepts. A rescission amounts to the unmaking of a contract and is not merely a termination of the rights and obligations of the parties towards each other, but is an abrogation of all rights and responsibilities of the parties towards each other from the inception of the contract. It is a form of retroactive relief. Cancellation is an act destroying the force and effectiveness of the contract, and is a form of prospective relief, affecting the future rights and obligations of the parties towards each other. The General Assembly is cognizant of the difference between these legal concepts.
*Klopp v. Keystone Ins. Co.*, 528 Pa. 1, 7 n. 6, 595 A.2d 1, 4 n. 6 (1991) (quotations omitted).

The view of Chief Justice Nix, that the statutory scheme on cancellation did not preclude the right to rescind, prevailed, to a limited extent. In *Klopp v. Keystone Ins. Co.*, 528 Pa. 1, 595 A.2d 1 (1991), our Supreme Court decided the issue of "whether the legislature intended to exclude recission altogether as a remedy by the passage of Act 78." *Id.* at 6, 595 A.2d at 3. The court held that "Act 78 does not abrogate an automobile insurer's common law right to rescind a policy for sixty days after the policy is written." *Id.* Quoting a portion of the statute that provided: "Nothing in this act shall apply: ... (3) To any policy of automobile insurance which has been in effect less than sixty days....," the Supreme Court held that the insurer was entitled to enforce all of its common law remedies until the statutory scheme applies. *Id.* at 6–7, 595 A.2d at 3, quoting 40 P.S. 1008.6(3).

The court in *Klopp* did not decide or opine whether the right to rescind applies beyond sixty days after the effective date of the policy. Nonetheless, a recent Superior Court decision holds that an automobile insurer has no right to rescind a policy after sixty days in order to deny a claim of an innocent third party:

> The outcome of the instant case is not controlled by either *Klopp* or *Shemory* [*v. Keystone Ins. Co.*, 420 Pa.Super. 405, 616 A.2d 1036 (1992)], however. Royal sought neither cancellation nor rescission within the prescribed sixty day period. Although there is some dispute as to the effective date of the binder issue to Mr. Huffine, the certified record discloses that it was effective either on the 24th or 25th of April 1985. That the accident underlying the instant appeal occurred on June 20th, fifty-seven days into the binder period, is irrelevant. Royal did not attempt either to cancel the binder or seek rescission until July 28, 1985, well over sixty days after the binder's April effective date. Within the parameters defined by *Klopp* and explicated by *Shemory*, Royal Insurance Company failed to act on a timely basis to protect its rights and is therefore ineligible to receive common law rescission.

*Strickler v. Huffine,* 421 Pa.Super. 463, 469–70, 618 A.2d 430, 433–34 (1992).[4]  Therefore, within sixty days, an automobile insurer can rescind an insurance policy for material misrepresentation.  *See Klopp, supra* (first party); *Shemory, supra* (third party).  However, after sixty days, in a contest between a third party and a defendant's liability insurer, the insurer is limited to the cancellation process provided by the insurance statute.  *Strickler, supra.  In accord, State Farm Mut. Auto. Ins. Co. v. Armstrong, et al.,* 949 F.2d 99 (3rd Cir.1991) (pursuant to Pennsylvania law, in suit involving several third-party claimants, where liability insurer attempted to rescind policy beyond sixty days after the policy's inception, policy was not void *ab initio* ).[5]

Our Supreme Court has opined that "[i]t is the custom of the insurance industry, and sound public policy, to provide on-the-spot temporary insurance coverage in the form of a binder until the application information can be verified and a formal policy issued." *Klopp, supra* 528 Pa. at 7 n. 5, 595 A.2d at 4 n. 5.  Pursuant to the sixty-day window in which the insurer may

**4.** In *Shemory, supra,* this Court held that a party injured in an automobile accident cannot bring a direct action against an alleged tortfeasor's insurance carrier when the insurance policy was void *ab initio* for fraud in the application.  The insurance policy in *Shemory* was void *ab initio* because the policy was procured through misrepresentation and the insurer rescinded it within sixty days of its issuance.  The injured third party has moved for Supreme Court review of the case on December 6, 1992.  As of the writing of this concurrence, the Supreme Court has neither granted nor denied the petition for *allocatur.*

**5.** The different positions taken by the Justices in the *Bonnie Beck* case establish no majority holding as to whether an automobile insurer retains the common law right to rescind an auto insurance policy as void *ab inito* beyond sixty days *against an insured* who has made a material misrepresentation.  While *Bonnie Beck* involved first party claims, the insurers therein rescinded the policies within sixty days.  *See id.* 517 Pa. at 221–22, 535 A.2d at 589–90.  *Strickler, supra; Shemory, supra;* and *Armstrong, supra* each involved third party claimants.  *Klopp, supra,* involved a claim by the insured against her liability insurer, and the insurer rescinded the policy within sixty days.  Therefore, the insurer's right to rescind an automobile insurance policy *against the misrepresenting insured* beyond sixty days after the policy's inception has not been held to be preempted by the cancellation provisions of the insurance statutes, 40 P.S. §§ 1008.1–1008.11.  As that issue is not before us in this case, we offer no opinion as to its resolution.

exercise the common law right of rescission, insurers can immediately underwrite risks via the issuance of binders and then verify the insured's representations within sixty days to protect themselves from liability for a third-party suit against a dishonest insured. However, insurers are not given more than sixty days from the policy's inception to conduct their investigation and conclude that the policy is of no legal significance, if the claim arises from a third party.

In the instant case, the parties stipulated that the fleet insurance policy was in effect prior to August 30, 1990, the date of the accident. The record reveals that an adjuster, on behalf of appellant, did not decline coverage until July 19, 1991. There is no indication that appellant rescinded as to Walker within sixty days of the policy's inception.

Appellant did not have a right to rescind the policy as to appellee because it did not rescind within the sixty-day window. *Strickler, supra.* Therefore, appellant is not entitled to relief pursuant to *Shemory, supra.*

Appellant also relies upon exclusionary language in the rental agreement for its position that the policy provided no coverage to appellees. We disagree.

The exclusion states that lessor shall provide certain liability insurance, but, "... [s]uch policy shall not apply ... (3) To any liability of Lessee or driver; or any employer of either, arising while the vehicle is being used in violation of any of the limitations set forth in paragraph 1 above." *See* Rental Agreement, paragraph 5. Therefore, liability insurance coverage is excluded *only while the vehicle is being used* in violation of the lease agreement's paragraph 1, which, in relevant part, provides: "In no event shall the vehicle be used, operated or driven (1) for transportation of persons for hire, express or implied...." Rental Agreement, paragraph 1.

The stipulated facts provide that "Robert Walker was operating the Lucky Duck rental vehicle on August 30, 1990 when he was involved in an auto accident. At the time of the

accident, Robert Walker was using the Lucky Duck rental vehicle for his own non-business personal use."

The exclusion does not preclude coverage in the instant case because appellees' injuries did not arise while the vehicle was being used in violation of a lease term. Hence, appellant cannot properly disclaim coverage on the basis of this exclusion.[6]

Walker was a permissive user, appellant cannot rescind the policy and there are no relevant exclusions precluding coverage. Therefore, we affirm the judgment entered.

Judgment affirmed.

BECK, J., concurs in the result.

---

6. We recognize that this Court recently addressed a similar, yet distinct exclusion in *Ratush v. Nationwide Mut. Ins. Co.*, 422 Pa.Super. 389, 619 A.2d 733 (1992). The exclusionary language in *Ratush* stated that: "There is no coverage for use by any insured of any vehicle to carry persons or property for a fee." *See id.* at 390 n. 1, 619 A.2d at 733 n. 1. The court noted that it would interpret that exclusion and a different one, which was arguably applicable in the case, the same way: that as long as the car was a taxi, the personal automobile policy which the taxi driver's wife had purchased did not provide coverage. In *Ratush*, the car was undeniably a "taxi" and the accident occurred while the taxi was unoccupied by passengers but when the driver was willing to pick up passengers. Therefore, in that case, the car *was* being used as a taxi. In the instant case, however, the parties have stipulated that lessee was using the car for his own personal use. The parties are bound to such stipulation. *Light v. Miller*, 303 Pa.Super. 527, 530, 450 A.2d 51, 53 (1982). Therefore, we give the instant exclusion its plain meaning and hold that it does not apply herein because, at the time of the accident, the car was not being used for transportation of persons for hire.